**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-0149-003-CVE |
| | ) | (14-CV-0118-CVE-TLW) |
| CALVIN SHOBE, | ) | |
| a/k/a Koo-G | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED[1] OPINION AND ORDER**

On March 14, 2014, defendant Calvin Shobe, a federal prisoner with retained counsel, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 257). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On August 4, 2011, a federal magistrate judge signed a criminal complaint (Dkt. # 1) charging Joseph Paul Beeson, III, Chantz Germaine Patterson, and Shobe with aiding and abetting each other to commit the crime of bank robbery by means of force or violence in violation of 18 U.S.C. § 2113(a) and (d). The complaint alleged that Beeson, Patterson, and Shobe robbed Arvest Bank on August 2, 2011 with the use of a dangerous weapon. Shobe was arrested and made his

---

[1] A scrivener's error in the date occurred on page 2, paragraph 2, and was corrected to October 11, 2011.

initial appearance on August 5, 2011. The magistrate judge appointed Fred Randolph Lynn to represent Shobe. Dkt. # 19. On September 8, 2011, a grand jury returned an indictment (Dkt. # 31) charging Beeson, Patterson, and Shobe with conspiracy to commit an offense against the United States (count one), bank robbery (count two), using, carrying, or brandishing a firearm during and in relation to a crime of violence (count three). Patterson and Shobe were also charged with possession of a firearm after previous felony conviction (count four). The Court entered a scheduling order setting the jury trial for October 17, 2011.

Lynn filed a motion for competency determination as to Shobe, because he observed troubling behavior by Shobe and Shobe was having difficulty engaging in conversations with Lynn. Dkt. # 48. He claimed that Shobe possessed the cognitive abilities of a third grader and was placed in learning disability classes in school. Lynn also stated that Shobe was receiving Social Security disability benefits due to a mental disability and that Shobe may not have understood the difference between right and wrong at the time of the robbery. Shobe was referred to the Bureau of Prisons for a competency examination, and the Court reset the jury trial for December 19, 2011. On October 11, 2011, Beeson changed his plea to guilty as to counts two and three. Shobe's competency evaluation could not be completed in time for a December 2011 jury trial, and the trial was continued to March 19, 2012.

On January 5, 2012, a grand jury returned a superseding indictment (Dkt. # 80) charging Patterson, Shobe, and La-Terria Ti-Shawn Byrd with additional charges related to a bank robbery that occurred on July 7, 2011.[2] The superseding indictment alleges that Patterson, Shobe, Byrd, and

---

[2] The superseding indictment also realleged counts one through four of the original indictment, but Beeson was not named as a defendant in the superseding indictment.

2

an unindicted juvenile identified as Q.Y. conspired to commit an offense against the United States (count five), robbed a bank by means of force or violence (count six), and used, carried, or brandished a firearm in relation to a crime of violence (count seven).

The Court received Shobe's competency evaluation on February 6, 2012. Dkt. # 96. The examiner concluded that Shobe was malingering and feigning mental illness in an attempt to obtain a more favorable result in his criminal proceedings. Id. at 11. The examiner noted that it would be possible for a person with a legitimate mental illness to engage in malingering by exaggerating his symptoms, but the examiner found no evidence that Shobe had any type of legitimate mental illness. Id. at 12. The evaluation stated that Shobe was competent to stand to trial and there was anecdotal evidence suggesting that Shobe had previously feigned incompetence to avoid criminal consequences for his actions. Id. at 14. In a separate report (Dkt. # 136), the examiner found that Shobe was not experiencing symptoms of a mental disease or defect near the time when the offenses were allegedly committed, and Shobe was able to understand the "nature and quality, or wrongfulness of his alleged behavior at the time of the instant offense." Dkt. # 136, at 4. The Court accepted the competency evaluation and found that defendant was competent to stand trial. Dkt. # 98.

The trial was continued to March 26, 2012. Patterson and Byrd pled guilty before trial, and Shobe was the only defendant who intended to go to trial. Six days before trial, Shobe retained a new attorney, Neal Kirkpatrick, to represent him, and Kirkpatrick filed a motion (Dkt. # 147) to continue the jury trial. Lynn filed a motion to withdraw as defense counsel. Dkt. # 146. The Court denied both motions. Defendant was not automatically entitled to a continuance simply because he retained new counsel shortly before trial, and the Court found that the case was not particularly

complex and Kirkpatrick could get up to speed relatively quickly with help from Lynn. Dkt. # 153, at 3.

The trial began on March 26, 2012 and, before calling in prospective jurors, the Court held a colloquy with defendant and his attorneys about any plea offers that had been made by the government. Dkt. # 209, at 1-2. Counsel for the government explained that he had made an offer for defendant to change his plea to both § 924(c) counts with the possibility of a reduction of defendant's sentence for cooperation. Id. at 2. Defendant confirmed that the plea offer had been communicated to him, but he voluntarily chose to reject the plea offer. Id. at 3. The government called more than 20 witnesses to testify at trial, including Beeson, Patterson, Byrd, and Q.Y. Defense counsel chose not to cross-examine witnesses immediately after the government's direct examinations, and they made a strategic decision to recall the witnesses as part of defendant's case-in-chief. Dkt. # 274-1; Dkt. # 274-2. Lynn and Kirkpatrick conferred before trial and they believed that it could make defendant appear as if he had a stronger defense if they cross-examined the government's witnesses as part of the defendant's case. Dkt. # 274-1, at 3; Dkt. # 274-2, at 3. Lynn and Kirkpatrick also considered whether defendant could present a diminished capacity defense, but they rejected this idea because the government would able to use the unfavorable competency evaluation to rebut this defense. Id. On March 28, 2012, the jury found defendant guilty on all counts, but the jury found that defendant did not brandish a firearm during either bank robbery. Dkt. # 164.

A presentence investigation report (PSR) was prepared by the United States Probation Office. The adjusted offense level for counts one, two, and four was 24, and the adjusted offense level for counts five and six was 28. Defendant was subject to consecutive statutory mandatory

minimum sentences of five years as to count three and 25 years as to count seven. Defendant had a lengthy criminal history but many of his prior convictions did not add points to his criminal history category, and his total of six criminal history points resulted in a criminal history category of III. As to counts one and five, defendant faced a statutory maximum sentence of five years, which was well below the advisory guideline range; thus, his advisory guideline sentence for these counts was 60 months. The advisory guideline range for counts two and six was 97 to 121 months, but the advisory guideline range for count four was 97 to 120 months due to a statutory maximum of ten years imprisonment under § 924(a)(2). Counts three and seven carried a statutory mandatory minimum sentence of 60 months and 300 months respectively, and these sentences were required to run consecutively to any other sentence imposed under § 924(c).

Before defendant's sentencing hearing, Kirkpatrick filed a motion for variance (Dkt. # 206) requesting a sentence below the advisory guideline range. Kirkpatrick argued that imposing a sentence within the advisory guideline range would result in an unreasonable disparity with the sentences received by co-defendants who pled guilty before trial. Dkt. # 206, at 2. He also argued that imposing the consecutive statutory mandatory minimum sentences required by § 924(c) would constitute cruel and unusual punishment in violation of the Eighth Amendment. Defendant was represented by Kirkpatrick at the sentencing hearing. Id. at 3. The government called Kwin Bromley, a police officer from Coffeyville, Kansas, to testify and Bromley testified that he had encountered defendant over 100 times in his professional capacity as a police officer. Dkt. # 227, at 3-5. Bromley also testified that defendant had a history of recruiting others to commit crimes on his behalf. Id. at 6. Defendant called his mother, Myrtle Shobe, to testify, and she explained that defendant was receiving Social Security disability benefits and that he had difficulty in school. Id.

5

at 9-10. She acknowledged that defendant has had many encounters with law enforcement officials, but she believed that defendant's family would support him when he was released from prison. Id. at 10. The Court denied defendant's request for a variance on constitutional grounds as to the consecutive statutory mandatory minimum sentences for counts three and seven, but the Court exercised its discretion to vary downward nine levels as to counts one, two, four, five, and six. This resulted in an advisory guideline range of 37 to 46 months for these counts. The Court sentenced defendant to a total term of imprisonment of 397 months. This included mandatory consecutive sentences of 60 months and 300 months as to counts three and seven, and a sentence of 37 months as to counts one, two, four, five, and six.

Defendant filed a direct appeal to the Tenth Circuit Court of Appeals and Lynn represented defendant on appeal. Dkt. # 213. Defendant argued that his sentence was substantively unreasonable due a disparity between his sentence and the sentences received by his co-defendants, and he claimed that the plea agreement he was offered by the government was not as favorable as the offers made to his co-defendants. He also argued that the Court failed to take into account that many of his prior convictions were relatively minor. On January 30, 2013, the Tenth Circuit rejected defendant's arguments and affirmed his sentence. Dkt. # 235. Defendant filed a petition for writ of certiorari with the United States Supreme Court, but his petition was denied on March 18, 2013. Defendant filed his § 2255 motion (Dkt. # 257) on March 14, 2014. The § 2255 motion was filed within one year of the date his conviction became final, and defendant's § 2255 motion is timely under § 2255(f)(1).

**II.**

Defendant asserts four grounds for relief in his § 2255 motion: (1) trial counsel failed to object to inadmissible evidence or statements at trial; (2) trial counsel was ineffective for recalling the government's witnesses during defendant's case-in-chief; (3) trial counsel should have filed objections to the PSR or a sentencing memorandum requesting a departure under the United States Sentencing Guidelines (USSG); and (4) appellate counsel was ineffective for failing to raise the arguments contained in grounds one, two and three on direct appeal. Defendant has filed a brief (Dkt. # 272) in support of his § 2255 motion, and the government has filed a response (Dkt. # 274).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

7

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

**A.**

Defendant argues (ground one) that the government offered inadmissible evidence at trial and that defense counsel failed to object to the admission of such evidence. The evidence to which defendant now objects includes alleged evidence of other crimes and alleged hearsay statements offered by two Federal Bureau of Investigation (FBI) agents during trial. Dkt. # 257-1, at 1-2; Dkt. # 272, at 7-12. The government responds that the alleged other crimes evidence did not fall within the scope of Fed. R. Evid. 404(b), because the statements of Q.Y. concerned facts that were intrinsic to the charged offenses. The government also argues that the alleged hearsay statements referenced by defendant are not actually hearsay, because the FBI agents were not repeating an out-of-court statement made by any person. Dkt. # 274, at 18-19.

Defendant claims that Q.Y. was permitted to testify about other crimes allegedly committed by defendant, and defense counsel should have objected to Q.Y.'s testimony. He cites three portions of Q.Y.'s trial testimony to support this argument. First, Q.Y. testified that there was an incident where Q.Y. "talked back" to Shobe and Shobe "got physical with me, like punching me in the chest . . . ." Dkt. # 225, at 113. Second, Q.Y. testified that Shobe asked him to rob a bank and Q.Y. refused to participate in the robbery, and Shobe "put a gun up to my head and said if I didn't rob the

8

bank they was going to shoot me . . . ." Id. at 115. Third, Q.Y. thought he was "going to die" if he didn't rob the bank, because Shobe had hurt him before and Q.Y. was worried that Shobe would hurt him or his family if he did not participate in the robbery. Id. at 116.

Defendant contends that the government failed to file notice that it would seek to use Rule 404(b) evidence at trial, and the statements should have been excluded. Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, evidence that is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act" is not subject to the admissibility requirements of Rule 404(b). United States v. Hood, 774 F.3d 638, 644 (10th Cir. 2014); see also United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011) ("It is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged"). The Court has reviewed the trial transcript, and it is clear that each of the statements cited by defendant was made in the context of Q.Y.'s testimony concerning his decision to participate in the robbery of The City National Bank and Trust Company of Lawton, Oklahoma (City National Bank) on July 7, 2011. Counsel for the government was questioning Q.Y. about why he chose to join in a conspiracy to rob City National Bank and Q.Y. testified that he initially refused to participate. Dkt. # 225, at 113. Q.Y. testified that Shobe put a gun to his head and threatened to kill him if he did not rob the bank for Shobe. Id. at 116. Q.Y. believed that Shobe was serious, in part, because of a prior encounter with Shobe in which Shobe had used physical violence against Q.Y. Id. at 115. This testimony was critical to establish the reason why Q.Y. chose to rob City National Bank at Shobe's request, and it also tended to show that Shobe was a key member or perhaps even the leader of a conspiracy to

9

commit bank robbery. The portions of Q.Y.'s testimony cited by defendant did not constitute evidence of other crimes under Rule 404(b), and defense counsel had no basis to object to the admission of this evidence at trial.

Defendant argues that defense counsel should have objected to hearsay statements repeated by FBI special agents Loel Skoch and Charles Jones. Skoch testified about the firearm used in the robbery of Arvest Bank on August 2, 2011, and he said that "[w]hen Mr. Beeson gave it back to them, they put it under the passenger seat of the car." Dkt. # 226, at 68. Jones testified that he "understood" from his investigation that defendant, Patterson, and Beeson planned the robbery of Arvest Bank, and that defendant and Patterson also participated in the robbery of City National Bank. Dkt. # 225, at 140-41. Defendant believes that Skoch and Jones testified to hearsay statements because they did not have personal knowledge of these facts. Hearsay is defined as an "out-of-court statement offered 'to prove the truth of the matter asserted.'" United States v. Gutierrez de Lopez, 761 F.3d 1123, 1133 (10th Cir. 2014). A witness' testimony may constitute hearsay if the witness merely has knowledge of an out-of-court statement, rather than the personal knowledge of the facts underlying the statement. Id. The testimony identified by defendant here does not contain inadmissible hearsay. Skoch's testimony was made in the context of describing a photograph of a Hi-Point firearm used to rob Arvest Bank, and he was asked to explain a photograph showing where the firearm was found in a vehicle. Based on his investigation, he had personal knowledge of where the firearm was found and his testimony did not constitute hearsay. Jones was also testifying to information that he learned during his investigation of the bank robberies, and he learned during his investigation that defendant was involved in two separate bank robberies. Jones was not repeating an out-of-court statement and he was relying on information

gathered during his investigation, and the testimony cited by defendant does not constitute hearsay. Defense counsel had no basis to raise a hearsay objection to the testimony of Skoch and Jones, and ground one of defendant's § 2255 motion should be denied.

**B.**

Defendant argues (ground two) that his trial attorneys provided ineffective assistance of counsel when they chose to cross-examine the government's witnesses as part of defendant's case-in-chief, because this gave the government a second opportunity to examine its witnesses and repeat damaging testimony. Dkt. # 272, at 14-16. The government responds that defendant's attorneys made a strategic decision that is virtually unchallengeable in a § 2255 motion, and defense counsel's decision was reasonable in light of the limited favorable evidence available for defendant's case-in-chief. Dkt. # 274, at 20-21.

A court's review of counsel's performance is ordinarily "highly deferential," but a defendant's burden is even higher when he challenges an informed, strategic decision by defense counsel. Strickland, 466 U.S. at 690. There is a presumption that a strategic decision by counsel falls within the wide range of reasonable professional assistance, and a defendant must show that a strategic decision was "completely unreasonable, not merely wrong, so that [the decision] bear[s] no relationship to a possible defense strategy." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000).

The affidavits of Lynn and Kirkpatrick show that they conferred about possible trial strategies and they determined that calling witnesses as part of defendant's case-in-chief would make it appear as if defendant had a stronger case. Dkt. # 274-1; Dkt. # 274-2. They knew that this strategy would allow the government's witnesses to repeat some of their testimony, but they believed that this would be no more harmful than cross-examining witnesses and having the

11

government conduct re-direct examination of its witnesses. Defendant has cited examples of when the government witnesses repeated damaging testimony during the defendant's case-in-chief, but Lynn and Kirkpatrick are correct that the same thing would have occurred if the witnesses were cross-examined during the government's case-in-chief. In this case, defense counsel had very little evidence that it could use to independently put on a defense case, and there may have been some value in calling the government's witnesses as part of a defense case. Defense counsel was still permitted to cross-examine witnesses and ask leading questions, even though they called the witnesses as part of defendant's case, and the manner of questioning witnesses was not impacted by the trial strategy. Defendant has not shown that the trial strategy selected by his attorneys was unreasonable and, quite to the contrary, defendant's counsel's decision was based on a thorough understanding of the case and the limited favorable evidence available to defendant. Even if the Court were to find that defense counsel made an unreasonable strategic decision, the Court would not find that defendant suffered any prejudice from the trial strategy adopted by defense counsel, because the evidence already came in as part of the government's case-in-chief and the evidence against defendant was so strong that the trial strategy had no effect on the outcome of the case. Ground two of defendant's § 2255 motion should be denied.

## C.

Defendant claims (ground three) that Kirkpatrick was ineffective during the sentencing proceedings, because Kirkpatrick failed to file formal objections to the PSR or a motion for downward departure based on defendant's alleged mental disability or diminished capacity. Dkt. # 272, at 19-27. The government responds that Kirkpatrick filed a motion for variance (Dkt. # 206) and the Court was well aware of defendant's alleged mental disabilities. Dkt. # 274, at 22-25.

12

Defendant claims that Kirkpatrick should have objected to the leader/organizer enhancement, because there was evidence that defendant lacked the mental capacity to manipulate Beeson and Q.Y. to rob a bank. Dkt. # 272, at 19. This argument is closely related to defendant's argument that Kirkpatrick should have moved for a downward departure based on defendant's alleged mental disabilities, because the proposed objection to the leader/organizer enhancement would have been based on defendant's alleged mental deficiencies and his asserted inability to manipulate another person due to low IQ. Id. at 20. The government is correct that the Court was aware of defendant's allegations that he suffered from a mental illness or disease. However, the Court was also aware of the competency evaluation clearly finding that defendant was malingering and that his symptoms were exaggerated in an attempt to avoid criminal responsibility for his actions. See Dkt. # 96. Kirkpatrick states that he considered whether to raise a diminished capacity argument at the sentencing phase, but he rejected this idea because the government could use the mental competency examination against defendant and the Court would have likely imposed a heavier sentence if Kirkpatrick raised a "spurious diminished capacity argument." Dkt. # 274-2, at 3. Contrary to the arguments raised by defendant's current attorney, the Court was aware of defendant's claims that he suffered from mental illness when it determined defendant's sentence, and Kirkpatrick wisely refrained from raising this line of argument during the sentencing hearing. Instead, Kirkpatrick argued that there would be an unwarranted disparity between the sentences of co-defendants if a sentence within the advisory guideline range were imposed, and the Court varied downward by nine levels as to defendant's counts other than his § 924(c) counts. Kirkpatrick's performance was well within the range of reasonable professional assistance, and defendant has not shown that he received

ineffective assistance of counsel during the sentencing phase of the proceedings.[3] Ground three of defendant's § 2255 motion should be denied.

**D.**

Finally, defendant argues (ground four) that appellate counsel was ineffective on direct appeal for failing to raise the ineffective assistance of counsel claims contained in his § 2255 motion. This argument fails for two reasons. First, it is generally inappropriate to raise ineffective assistance of counsel claims on direct appeal, and defendant has not shown that there is anything in the record that would suggest that the Tenth Circuit would have considered such claims on direct appeal. United States v. Flood, 635 F.3d 1255, 1260 (10th Cir. 2011). Second, the Court has found that defendant's ineffective assistance of counsel claims lack merit and appellate counsel was not ineffective for failing to raise these claims on direct appeal. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). The Court finds that ground four of defendant's § 2255 motion should be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 257) is **denied**. A separate judgment is entered herewith.

**DATED** this 15th day of May, 2015.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[3] Defendant could be arguing that Kirkpatrick failed to argue that much of defendant's criminal history was relatively minor and that the PSR overrepresented defendant's capacity for violence. Dkt. # 272, at 26-27. The Court specifically mentioned this issue at the sentencing hearing and relied on the non-violent nature of defendant's prior convictions as part of its basis for granting a downward variance. Dkt. # 227, at 27.